United States v. Astorga. This is Mr. Lee and Ms. Walters. This is 21-2026, but if you would like to speak, please do. Good morning, Your Honor. Josh Lee and I represent Martin Astorga. Mr. Astorga is asking the court to vacate and remand for resentencing because the district court erred in concluding that Mr. Astorga was a supervisor in the criminal activity for which he was convicted. The district court found that Mr. Astorga had the role of supervisor with respect to three other participants, but this was mistaken. This court's decision in Pellier says that the test is that the defendant has to exercise a degree of control or organizational authority over a subordinate involved in the drug distribution scheme. And those elements just aren't present on this record. Mr. Astorga didn't exercise control or authority over anybody else. None of the three people identified was Mr. Astorga's subordinate. And at least as concerns Joanne Dunlap and Jesse Dunlap, they weren't involved in the drug distribution scheme in any sort of sustained way. I'm just intrigued by your words, sustained way. I don't quite see that in the test. So I think it's implied in the fact that the person has to be their subordinate. But, you know, even if you think that it could be sufficient if they're temporarily involved, it still has to be the case that the defendant exercised control or authority over those people and that these people were his subordinate. And there's not any evidence of that. So if you start with Jesse Dunlap, Mr. Astorga's wife, all we really know is that on one occasion, Jesse and Mr. Astorga took a trip together to pick up drugs in Colorado Springs. Let me let me ask you about about that trip and how it may fit in with some of our case law. So I was looking at the Backus case, and I've got a couple of things I want to read to you that were said in that case. And it says, in order to be a supervisor, one needs to merely give some form of direction or supervision to someone subordinate in the criminal activity. And so as we talk about Mr. Astorga's wife, the things the government needed to show that there, at least according to Backus, was that there was some sort of direction and that she was subordinate to him in the criminal activity. Now, the direction that the government has brought up here was that Mr. Astorga was telling her where to go, that she was doing the driving. He was telling her where to go. He was not conveying to her who the person on the other end of the line was. She was not trusted to speak to them for whatever reason. I think part of the record says maybe because she didn't speak Spanish, but she certainly wasn't given the phone and allowed to speak to them while he drove. So he was telling her where to go. So the government's position is that's giving direction, and that would find some support in the Backus case where the direction was minimal. And then once they were pulled over, she was the person with the drugs in her purse, and she at least initially was agreeing to take the fall for the crime, which to me could be used as an inference that she was subordinate to him, that she was taking the fall so the boss wouldn't have to. What's your response to those points? I don't think that you can infer direction from anything that happened. So first of all, I think that if you read Backus in the context of the rest of this court's case law, by direction, Backus has to mean the exercise of control or authority. And we know that that's what Backus has to mean, because in cases like Pellier, the court says that what's required is control or authority. So the question then is whether relaying directions to Jessie constitutes exercising control or authority. I don't think it does. I want to mention one thing. I think Your Honor said that, you know, Jessie wasn't allowed to know who the person on the other end of the phone was. The record shows that Mr. Astorga was not allowed to know who the person on the other end of the phone was. He tried to cooperate and identify his supplier, but was not able to do that. So I think the best way to read Mr. Astorga providing directions to Jessie is that he's providing her with information, which is not the same thing as exercising control. So if you have, let's take the Ninth Circuit's decision in Holden, which I discussed in my briefs. There, the court said, just because the defendant told someone else how to go about depositing money in a particular account doesn't make the other person his subordinate any more than… Can I ask a question about that? What if Mr. Astorga had told his wife, okay, turn right on Huron Street, and she turns left? Do you think Astorga would have said, oh, that's all right, I'm not directing you on how to turn? Or would he have said, I told you to turn right, and you immediately better correct that? I think that he would have told her, you need to go this way according to the directions, but I don't think that makes him her supervisor any more than if I'm driving, and my wife is reading the map, and she's telling me how to get there. That doesn't make her my supervisor or me her subordinate. She's just giving me information about how to get there. And, you know, if she turns the wrong direction, he's giving her information that, no, this is the right direction. But it still is not more than providing information. What if, hypothetically, he tells the wife, you put the drugs in your purse. If we get stopped, you don't want to have plausible deniability. That gets a whole lot closer to being a supervisor if he directs her to do that. And we know that she did put the drugs in her purse. And so if we're talking, you know, you have two arguments. One is sufficient evidence for a finding of supervisory authority. You do have a different procedural challenge. But on the substantive challenge, can't we reasonably infer that she put the drugs in her purse, kept it in her purse, that that creates a reasonable inference that he had told her to put it in your purse? I don't think that's the case. I don't think you can infer that. Just the fact that she did it, I don't think that you can infer that he told her to do it. But nevertheless, there are also these cases that say an isolated instance of asking a family member for help does not constitute supervision. So this court has not addressed that question yet, whether an isolated instance of asking a family member for help constitutes supervision. But the Seventh Circuit has in this really helpful and well-reasoned opinion in Collins, which I've cited. And so I do think that, you know, this one trip that occurred across this one day is an isolated instance of him asking Jesse for help at best. But if I ask, you know, what if I decide to go rob First National today and I ask my brother, Phil, would you drive the getaway car for me? You know, and I get caught and then I get a leadership or supervisory enhancement. You think a judge, you know, and you're the judge, Judge Lee, you're really going to deny an enhancement because, well, you know, it was just one time. You just drove a getaway car one time. I mean, there's family support. There's family support. You know, hiding illicit drugs is a little bit different maybe than driving, you know, than driving a car for a guy that doesn't have a license. So I think there's a separate problem with the hypothetical you raised. And, you know, the defendant says, well, I'm going to rob a bank, you know, would you drive me? And then does that make him a supervisor? If you look at Application Note 4 of 3B1.1, it says this enhancement does not apply to someone who suggests that another person commit the offense. So I think that's a problem with the hypothetical is that you have the defendant suggesting to his brother to commit the offense. And I also think that that is the same problem that we have with this case in that there wouldn't be any basis to infer any more than a suggestion, even if you could infer a suggestion. I think that that would be my response on Jesse. You know, the government has also argued that Alejandra Gomez was a subordinate to Mr. Astorga. This is the person who was basically just Mr. Astorga's customer, that there wasn't anything more than a buyer seller relationship between the two. Mr. Astorga didn't have any say over what Gomez did with the drugs after he sold them to him. And this court has held in a number of cases, one of them being Evans in 1993, that when a customer resells drugs, that doesn't make the supplier, the customer supervisor, absent any evidence of control over the customer's resale of the drugs. And that's we don't have that here. The government's only real argument with regard to Ms. Gomez is that when Ms. Gomez tested that texted Mr. Astorga, bring me some drugs. I have a customer who wants a big one and I can grab the cash that that that text from Gomez made Mr. Astorga her supervisor, which I don't really get the fact that a dealer supplies drugs when after a customer says I have my own customer lined up. That doesn't make him her supervisor. In other words, Gomez was Mr. Astorga's customer and the guy who wanted the big one was Gomez's customer. If there are further questions, I'd like to reserve the remainder of my time. OK, Mr. Lee, we're going to stop the clock. You have a warranty that you'll have two minutes and 50 seconds. But Judge Bell, do you have any questions? No. OK, Judge Carson, do you? No, I don't. Thank you. OK, Mr. Miss Walters. Morning. May it please the court. Tiffany Walters for the United States. Whether an aggravating rule adjustment under Section 3B 1.1 applies, is that it's a question of relative culpability. Does Mr. Astorga bear greater responsibility than his wife, his sister-in-law or a low level drug dealer that he involved in his drug trafficking activities? On this record, the answer is yes. While Mr. Astorga may not have been operated a large, hierarchical drug trafficking organization, he directed the activities of his co-conspirators in support of his own drug trafficking. The district court did not clearly hear much less three times in finding that Astorga engaged in some form of direction or supervision. And this court should affirm remand solely for the supervised release condition. I'd actually like to start by turning to Joanne, who's the one co-conspirator that we haven't yet discussed. Compensation is a recognized factor to determine whether there's a supervisory relationship of their seller. The district court did not clearly air in finding that Astorga supervised Joanne where he compensated her for agreeing to allow him to have drugs delivered to her address. What evidence is there that Joanne knew that there were drugs, that these were drugs that are going to be sent to her? I think the best evidence of that is the fact that she was paid in a couple of those pills. So perhaps there's not direct evidence of her knowledge, but it's pretty easily inferred from the record that she knew that something was coming to her house at a certain time, that it was on its way, and she was compensated in pills, presumably fentanyl. Right, but the pills, I mean, there's no connection between the pills with which she was paid and the package because the package never made it there. No, no, that package did not make it there. So it would require an inferential leave. But I think the record would allow that inferential leave. So would you agree that your argument about the being paid in pills would be stronger if they were actually taken from the package that was delivered to her house? Absolutely. Those would be easier facts to argue. But I do believe the fact that she was paid, sort of originally it said he was going to pay her in money, cash, but ended up paying her in pills. And I think given the circumstances for how he was setting up the use of the delivery, coordinating that it was on its way, that I will be there to pick it up. And then the compensation in pills suggests that, in fact, she did have guilty knowledge that the package contained or would have contained drugs had it been delivered. So your burden on that, your burden on that would have been you'd have to prove that by the application of the of the enhancement by a preponderance. And presumably you'd have to prove that she knew there were drugs coming by a preponderance of the evidence standard. Yes. And it just seems to me that on this, this person that your evidence is, at least from my point of view, having a hard time meeting the 50.01 percent standard. I mean, certainly there would be a situation where if we had direct evidence for knowledge, that would be better. But given that Sorgas coordinating the pickup times, that he's using her address for the delivery, that he's compensating her for this, either in cash or ultimately in pills, all of that suggests guilty knowledge. But even if this court isn't convinced by Joanne, we have three participants in this case that we can rely on. And the court, the district court only needed to find one to apply the 3B1.1 enhancement in this case. So do you think do you think the do you think the wife is your best is your best hope here is the wife, the one where the evidence is the strongest that she that she was supervised? I think it's a close call between Joanne and Jesse. If if you if you assume that Joanne has guilty knowledge, because in Joanne's case, we have compensation, which is clearly a supervisory. One of the factors that the court looks to for supervision. And so that makes that case a little cleaner. But Jesse, too, I think that we have good evidence of direction in that case. I mean, we know that a Sorgas is the only individual who's communicating with his supplier. Jesse only knows what a Sorgas tells her. She's only there because a Sorgas has communicated something to her. She's there because she has brought her into this conspiracy. Jesse's there to play a significant role. She's the driver on a trip up to Colorado Springs to pick up drugs because a Sorgas doesn't have a driver's license. Now, a Sorgas is focusing a lot on Jesse's motives. Maybe she was just motivated to help her husband out. Maybe she just wanted to spend time with him. But I don't think 3B1.1 is focused on the co-conspirators or the co-participants motives. The question is whether or not there's an aggravating role, whether or not the individual, there's a disparity in terms of the relative culpability. And here, this is a Sorgas drug trafficking. This is his deal that he's setting up. And Jesse's helping out. There's no exception in this court's case law for familial help, simply because she's his wife doesn't excuse or make it so that the supervisory enhancement can't apply. And in fact, the fact that he may not have ordered her around or directed her isn't controlling either. As Judge Carson pointed out in Buckets, we're just looking for some form of direction or control. And this was a Sorgas drug trafficking run to control. We would have a different situation if we look to the example of, you know, someone just providing instructions, turn right, turn left. If we were, if we had two equals who are both along on the strip, equal participants and was just receiving information from the other. But we don't have that. We have Jesse having no information beyond that, which that which Sorgas shared with her. He told her when to leave, where to go. And while we don't have a direct conversation where he says, put these drugs in your purse or something along those lines. And this court has inferred that sort of direction under under facts that are similar to here. I would point the court's decision in Twaddle, where there was no evidence that the defendant who tossed drugs outside of the car while he was on a high speed chase directed his girlfriend to go look for those drugs. All that they had was the officers that actually observed the girlfriend looking for the drugs and a conversation after the fact saying, did you find them? No, I didn't find them. But the court said that on that record, the district court could infer that he could have asked her when he tossed the drugs to go back and look for it. And that was sufficient direction. It didn't look to whether or not he could dictate her actions. It looked to whether or not he was directing the criminal activity. And that's similar to what we have here, where Sorgas was directing the criminal activity and Joanne was helping support him in that mission to go pick up these drugs. And they certainly were not co-lethal participants in that role. You mentioned several times that inferences that can be drawn, which is, I agree with you, relevant to his substantive challenge, supervisory enhancement. But he's raised a distinct challenge based on a procedural challenge, a failure to adequately explain supervisory enhancement for any of these three. And the judge, you can correct me if I'm wrong, clearly, in my view, did not articulate any reason. And the argument that I thought I had read in your brief was, well, these are undisputed facts. But as we flesh out these undisputed facts, the applicability of a supervisory enhancement in each one of these three individuals, the three women, all turned on inferences. Jesse, did he tell her to put it in her purse? Was she following his instructions or was she just going along to take Mr. Lee's example of just wanting to spend quality time with her husband? With Joanne, you mentioned, you know, Gomez, rather, Ms. Gomez, was she getting paid or was she just a customer? Was she following directions, maybe the interpretation of that wiretap call that you all interpret differently? Or with Joanne, was she, you know, just somebody with arthritis that wanted fentanyl or was she really following his directions? In all of these cases, the applicability of the supervisory enhancement draws are predicated, as you're arguing, on inferences. And we really don't know what the judge's rationale was because he never articulated it. So at a minimum, don't we have to reverse and remand for further findings for the judge to articulate why he found a supervisory enhancement for one of the three of these? So I'd like to address that question in two parts first, and I think this turns heavily on the standard of review. So if we're looking at the substantive issue, the standard review would be clear error. Now, Mr. Lee has made arguments about reasonable inferences that can be drawn from the facts, and that may well be the case. But on clear error review, the question is whether or not the inferences that the district court could have drawn from these facts are also plausible, reasonable, whether or not the court has a definite and firm conviction that was made. And so if the question is, which is the best way to weigh the facts on clear error review, that's not enough. So that's as to the substantive piece. The procedural piece is reviewed for plain error because it wasn't raised below. So I think Mr. Lee and I agree on this piece, which is that if the district court clearly erred on the substantive findings, that in fact, there shouldn't have been a 3B1.1 enhancement, then no exclamation would save it. Melissa, stop your clock and give her another 45 seconds. I don't know if Ms. Walters can hear us, but you're not on mute. For some reason, we stopped hearing you. Ms. Walters, do you have the call-in information handy? Can you call in? Hello, can you hear me? Yes. We can hear you. And so we apologize, Ms. Walters. We had some technical stags. We added 45 seconds to the clock because you were talking for a bit where we couldn't hear you. So we'll give you whatever time you'd like to get your bearings. I will tell you that my memory of the last thing that I heard was you had broken down your answer into twofold. And one is you were addressing Mr. Lee's argument or the hypothetical with regard to the substantive issue under the clearly erroneous standard. And I think you were about to segue into the plain error analysis on his procedural challenge. And then I think it was just about that moment when you started talking that I just I couldn't hear you. So if you want to take whatever time you'd like to get your bearings and then start wherever you'd like to start. I appreciate that. I thought I had Zoom under control, but I guess there's always a new curveball with this. I appreciate your patience with me getting back online. And I also appreciate you jogging my memory. I think I know where I was. So let's move straight to the procedural plain error argument. So because this issue was not raised below, it's reviewed for plain error. Now, I think Mr. Lee and I agree that if the district court, in fact, did plainly err in its substantive finding, then no amount of explanation would save that. And in fact, if the district court did not plainly err, then Mr. Sorter could not meet prongs three and four. And I'm not sure that I would say Mr. Lee agrees with us, but that our position would be that even if the district court did not clearly err, then Mr. Sorter cannot show prejudice in that fact that he cannot show that absence to any with additional explanation, the result would have been any different because here the evidence supports application of aggravating role enhancement. Now, if the court does wish to reach the issue looking at. Well, can I ask you a question? Because in this goes to whether we have to address the issue to play devil's advocate. We can all imagine there were different inferences and combinations of inferences that a judge could have articulated. Or I guess this release certainly wouldn't agree. But your argument is that there are certain combinations of hypothetical. Findings that the judge could theoretically have said that would, in your view, sustain a supervisory enhancement. But there's a there's a reason to require the judge's explanation for a reason. And that is so that we're not having to guess on whether or not the judge just plain out made mistakes or whether the judge's explanation was supported by evidence. So it seems to me that we do have to decide whether the judge's articulation under plain air was sufficient, because if not, then it's just up to the three of us to say, you know, if we can contrive different explanations that would have survived a scrutiny for a supervisory enhancement. So it seems to me that we do have to address it. But do you think I'm wrong about that? Well, I guess I would say even if. In many cases, the court has addressed whether or not the explanation was sufficient, but I guess what the court has done in those cases has been to move to prong three or four and say, even if that explanation is not sufficient, then we can't meet prong three because we can't show the outcome would have been different. So that's one piece. But even stepping back to the adequacy of this, obviously, the explanation here is very limited. But this court has nonetheless affirmed on cases with limited explanations where there was enough on the record to show that it was reviewable. And in this case, it's not really a mystery what happened because we have a very limited universe of facts. We have a very limited testimony. We have a PSR. And I think it is possible from that to discern the basis of the district court's decision here. But even if the court finds that it's inadequate, and in addition to that, to step back, I'd also like to point to court. I think WACKER is a helpful case in seeing like how minimal of an explanation this court can still find sufficient. So there in WACKER, the court said the court noted that the district court had identified factors and said that the factors applied. Now, we don't have that exact scenario here, but we do have the district court going out of its way to confirm that the facts are undisputed, that the parties are not disputing the facts. You have the court laying out the enhancement that's considering and finding that expressly that it applies to the direction of three specific individuals. So this court has found the explanation sufficient in cases that aren't all that different from what we have here. But even if we go beyond that, I think then we move to problem three, so whether or not there's a reasonable probability of a different outcome. And there's just nothing in the record that would support the conclusion that had the district court added a few extra sentences, that it would have changed its mind. So we're going to move on to problem four, and that's with a review of the evidence, that the outcome would have been different or that the evidence doesn't support application of supervisor role enhancement here. The core, again, of the supervisor role enhancement is the relative culpability of the parties. This is Mr. Estorga's drug trafficking operation. And what distinguishes him from the penny ante drug dealer who's operating on his own, as Mr. Lee referenced, is the fact that he's bringing other people into his operation. He's bringing his family members into support to provide specific assistance with his drug trafficking operation. And that's what the aggravating role enhancement is concerned about. We don't have co-equals here. We have Mr. Estorga directing the operation and using his wife and his sister-in-law and a low-level drug dealer to support that. And so I see I'm out of time, but on these facts, I think that because there's no clear error as to the application of the supervisor enhancement, this court should affirm as to the aggravating role enhancement and remand with a limited remand solely to address the supervised release condition. Okay, thank you. Judge Abell, do you have any questions? No. Judge Carson, do you? I don't, thank you. Okay, and I know Mr. Lee has two minutes and 50 seconds for rebuttal, so we'll hear from Mr. Lee. Thank you, Your Honor. I want to speak about the procedural issue that was discussed at the end of the government's argument. I want to be really clear about this. It is not the case that if the district court did not clearly err on the substantive issue, that Mr. Estorga can't meet prong three on the procedural issue. And that's because prong three of the plain error review on the procedural issue only requires a reasonable probability that the outcome would have been different. And that is not the same as a sufficiency of the evidence. The clearly erroneous standard on the substantive issue says, could the district court have permissibly made this finding? And prong three of the plain error standard says, can we be confident that the district court would have made the same finding? So, in other words, if the matter is close, you affirm under the clear error standard. But if the matter is close, you reverse on prong three of plain error. And in this case, I think the worst case scenario from Mr. Estorga's perspective, I think, is that the inferences could have gone either way. And if the inferences could have gone either way, then I don't think the court can be confident that if the district court had confronted the proper legal standard, that it still would have applied the enhancement. The first or the last thing I want to address is the government citation to the Wacker case for the proposition that the findings here were sufficient. But if my memory serves, Wacker said, like, this is a close case on these findings. These findings should have been better. And what was this positive is that the district court recited the legal standard explicitly and explicitly found that the facts satisfied the legal standard that it had articulated. But we don't have that here. The district court did not articulate all of the relevant factors. It didn't say anything except for that Mr. Estorga was a supervisor because he supervised. And so I do think, at a minimum, you have to vacate and remand for resentencing with directions that the district court make specific findings if it's going to apply the supervisor enhancement. Thank you. Thank you, Mr. Lee. Judge Bell, do you have anything? No. Okay, Judge Carson, do you? I do not. Okay, thank you both, Ms. Walters and Mr. Lee. I don't want to sound like a broken record, but I also thought that briefing and arguments in the sketch were excellent. So this matter will be submitted.